1  Lincoln D. Bandlow, Esq. (CA #170449)
   Lincoln@BandlowLaw.com
2  **Law Offices of Lincoln Bandlow, PC**
   1801 Century Park East, Suite 2400
3  Los Angeles, CA  90067
   Phone: (310) 556-9680
4  Fax: (310) 861-5550

5  Attorney for Plaintiff
   Strike 3 Holdings, LLC

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  STRIKE 3 HOLDINGS, LLC,          Case Number:

12                    Plaintiff,     **COMPLAINT FOR COPYRIGHT
                                     INFRINGEMENT - DEMAND FOR**
13  vs.                              **JURY TRIAL**

14  JOHN DOE subscriber assigned IP
    address 98.147.248.22,
15
                      Defendant.
16

17

18        Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), brings this

19  complaint against Defendant, John Doe subscriber assigned IP address

20  98.147.248.22 ("Defendant"), and alleges as follows:

21                        **Introduction**

22        1.    This is a case about the ongoing and wholesale copyright

23  infringement of Plaintiff's motion pictures by Defendant, currently known only by

24  an IP address.

25        2.    Plaintiff is the owner of award-winning, critically acclaimed adult

26  motion pictures.

27        3.    Strike 3's motion pictures are distributed through the *Blacked*, *Tushy*,

28  *Vixen*, *Tushy Raw*, *Blacked Raw*, and S*layed* adult websites and DVDs.  With

                                1

1  millions of unique visitors to its websites each month, the brands are famous for

2  redefining adult content, creating high-end, artistic, and performer-inspiring

3  motion pictures produced with a Hollywood style budget and quality.

4         4.      Defendant is, in a word, stealing these works on a grand scale.  Using

5  the BitTorrent protocol, Defendant is committing rampant and wholesale

6  copyright infringement by downloading Strike 3's motion pictures as well as

7  distributing them to others.  Defendant did not infringe just one or two of Strike

8  3's motion pictures. Rather, Defendant has been recorded infringing 34 movies

9  over an extended period of time.

10        5.      Although Defendant attempted to hide this theft by infringing

11 Plaintiff's content anonymously, Defendant's Internet Service Provider ("ISP"),

12 Spectrum, can identify Defendant through his or her IP address 98.147.248.22.

13        6.      This is a civil action seeking damages under the United States

14 Copyright Act of 1976, *as amended*, 17 U.S.C. §§ 101 et seq. (the "Copyright

15 Act").

16                            **Jurisdiction and Venue**

17        7.      This Court has subject matter jurisdiction over this action pursuant to

18 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (jurisdiction over

19 copyright actions).

20        8.      This Court has personal jurisdiction over Defendant because

21 Defendant used an Internet Protocol address ("IP address") traced to a physical

22 address located within this District to commit copyright infringement.  Therefore:

23 (i) Defendant committed the tortious conduct alleged in this Complaint in this

24 State; (ii) Defendant resides in this State and/or; (iii) Defendant has engaged in

25 substantial – and not isolated – business activity in this State.

26        9.      Plaintiff used IP address geolocation technology by Maxmind Inc.

27 ("Maxmind"), an industry-leading provider of IP address intelligence and online

28 fraud detection tools, to determine that Defendant's IP address traced to a physical

address in this District.  Over 5,000 companies, along with United States federal and state law enforcement, use Maxmind's GeoIP data to locate Internet visitors, perform analytics, enforce digital rights, and efficiently route Internet traffic.

10.    To ensure that Defendant's IP address accurately traced to this District, Plaintiff inputted Defendant's IP address into Maxmind's GeoIP database twice: first when it learned of the infringement and again, just prior to filing this lawsuit.

11.    Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in this District because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) the Defendant resides (and therefore can be found) in this District and resides in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant or Defendant's agent resides or may be found in this District.

## Parties

12.    Plaintiff, Strike 3 is a Delaware limited liability company located at 2140 S. Dupont Hwy, Camden, DE.

13.    Plaintiff currently can only identify Defendant by his or her IP address.  Defendant's IP address is 98.147.248.22.  Defendant's name and address can be provided by Defendant's Internet Service Provider.

## Factual Background

### *Plaintiff's Award-Winning Copyrights*

14.    Strike 3's subscription-based websites proudly boast a paid subscriber base that is one of the highest of any adult-content sites in the world. Strike 3 also licenses its motion pictures to popular broadcasters and Strike 3's motion pictures are the number one selling adult DVDs in the United States.

15.    Strike 3's motion pictures and websites have won numerous awards, such as "best cinematography," "best new studio," and "adult site of the year."

16.    Strike 3's motion pictures have had positive global impact, leading

3

1   more adult studios to invest in better content, higher pay for performers, and to

2   treat each performer with respect and like an artist.

3       17.    Unfortunately, like a large number of other makers of motion picture

4   and television works, Strike 3 is the victim of mass Internet piracy.  Often

5   appearing among the most infringed popular entertainment content on torrent

6   websites, Strike 3's motion pictures are among the most pirated content in the

7   world.

8               *Defendant Used the BitTorrent File Distribution Network*

9                      *to Infringe Plaintiff's Copyrights*

10      18.    BitTorrent is a system designed to quickly distribute large files over

11  the Internet. Instead of downloading a file, such as a movie, from a single source,

12  BitTorrent users are able to connect to the computers of other BitTorrent users in

13  order to simultaneously download and upload pieces of the file from and to other

14  users.

15      19.    BitTorrent's popularity stems from the ability of users to directly

16  interact with each other to distribute a large file without creating a heavy load on

17  any individual source computer and/or network.  It enables Plaintiff's motion

18  pictures, which are often filmed in state of the art 4kHD, to be transferred quickly

19  and efficiently.

20      20.    To share a movie within the BitTorrent network, a user first uses

21  BitTorrent software to create a .torrent file from the original digital media file.

22  This process breaks the original digital media file down into numerous pieces.

23      21.    The entire movie file being shared has a hash value (*i.e.*, the "File

24  Hash").  A hash value is an alpha-numeric value of a fixed length that uniquely

25  identifies data.

26      22.    Hash values are not arbitrarily assigned to data merely for

27  identification purposes, but rather are the product of a cryptographic algorithm

28  applied to the data itself.  As such, while two identical sets of data will produce

4

the same cryptographic hash value, any change to the underlying data – no matter how small – will change the cryptographic hash value that correlates to it.

23.     To find and re-assemble the pieces of the digital media file, *i.e.*, to download the file using BitTorrent, a user must obtain the .torrent file for the specific file that has been broken down into pieces.

24.     Each .torrent file contains important metadata with respect to the pieces of the file. When this data is put into the cryptographic algorithm, it results in a hash value called the "Info Hash."

25.     The "Info Hash" is the data that the BitTorrent protocol uses to identify and locate the other pieces of the desired file (in this case, the desired file is the respective file for the infringing motion pictures that are the subject of this action) across the BitTorrent network.

26.     Using the Info Hash in the metadata of a .torrent file, a user may collect all the pieces of the digital media file that correlates with the specific .torrent file.

27.     Once a user downloads all of the pieces of that digital media file from other BitTorrent users, the digital media file is automatically reassembled into its original form, ready for playing.

28.     Plaintiff has developed, owns, and operates an infringement detection system, named "VXN Scan."

29.     Using VXN Scan, Plaintiff discovered that Defendant used the BitTorrent file network to illegally download and distribute Plaintiff's copyrighted motion pictures.

30.     To explain, while Defendant was using the BitTorrent file distribution network, VXN Scan established direct TCP/IP connections with Defendant's IP address.

31.     VXN Scan downloaded from Defendant one or more pieces of numerous digital media files.

5

32.     Plaintiff identified these pieces as portions of infringing copies of Strike 3's motion pictures.

33.     To explain, the VXN Scan system first searched for and obtained .torrent files claiming to be infringing copies of Plaintiff's works, and then downloaded complete copies of the digital media files that correlate to those .torrent files.

34.     Plaintiff then compared the completed digital media files to Plaintiff's copyrighted works to determine whether they are infringing copies of one of Plaintiff's copyrighted works.

35.     The digital media files have been verified to contain a digital copy of a motion picture that is identical (or, alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original copyrighted Works.

36.     VXN Scan then used the "Info Hash" value, contained within the metadata of the .torrent file correlated with a digital media file that was determined to be identical (or substantially similar) to a copyrighted work, to download a piece (or pieces) of the same digital media file from Defendant using the BitTorrent network.

37.     At no point did VXN Scan upload content to any BitTorrent user. Indeed, it is incapable of doing so.

38.     The VXN Scan captured transactions from Defendant sharing specific pieces of 34 digital media files that have been determined to be identical (or substantially similar) to a copyrighted work(s) that Plaintiff owns.

39.     VXN Scan recorded each transaction in a PCAP file.

40.     VXN Scan recorded multiple transactions in this matter.

41.     For each work infringed a single transaction is listed on Exhibit A.

42.     For each transaction listed, Exhibit A sets forth the Universal Time Coordinated (UTC) time and date of each transaction, along with (1) the Info Hash value obtained from the metadata of the corresponding .torrent file that

1   formed the basis of the VXN Scan's request for data, and (2) the File Hash value

2   of the digital media file itself.

3       43.    Exhibit A also sets forth relevant copyright information for each

4   work at issue:  the date of publication, the date of registration, and the work's

5   copyright registration number.   In a showing of good faith, Plaintiff has

6   intentionally omitted the title of the work from this public filing due to the adult

7   nature of its content, but can provide a version of Exhibit A containing the works'

8   titles to the Court or any party upon request.

9       44.    Thus, Defendant downloaded, copied, and distributed Plaintiff's

10  Works without authorization.

11      45.    Defendant's infringement was continuous and ongoing.

12      46.    Plaintiff owns the copyrights to the Works and the Works have been

13  registered with the United States Copyright Office.

14      47.    Plaintiff seeks statutory damages, attorneys' fees, and costs under

15  17 U.S.C. § 501 of the United States Copyright Act.

## COUNT I

## Direct Copyright Infringement

18      48.    The allegations contained in paragraphs 1-47 are hereby re-alleged as

19  if fully set forth herein.

20      49.    Plaintiff is the owner of the Works, which are each an original work

21  of authorship.

22      50.    Defendant copied and distributed the constituent elements of

23  Plaintiff's Works using the BitTorrent protocol.

24      51.    At no point in time did Plaintiff authorize, permit or consent to

25  Defendant's copying, distribution, performance and/or display of its Works,

26  expressly or otherwise.

27      52.    As a result of the foregoing, Defendant violated Plaintiff's exclusive

28  right to:

1      (A)    Reproduce its Works in copies, in violation of 17 U.S.C. §§ 106(1)

2  and 501;

3      (B)    Distribute copies of the Works to the public by sale or other transfer

4  of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3)

5  and 501;

6      (C)    Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4)

7  and 501, by showing the Works' images in any sequence and/or by making the

8  sounds accompanying the Works' audible and transmitting said performance of

9  the work, by means of a device or process, to members of the public capable of

10  receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform"

11  and "publicly" perform); and

12      (D)    Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5)

13  and 501, by showing individual images of the works non-sequentially and

14  transmitting said display of the works by means of a device or process to members

15  of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's

16  definition of "publicly" display).

17      53.    Defendant's infringements were committed "willfully" within the

18  meaning of 17 U.S.C. § 504(c)(2).

19      WHEREFORE, Plaintiff respectfully requests that the Court:

20      (A)    Permanently enjoin Defendant from continuing to infringe Plaintiff's

21  copyrighted Works;

22      (B)    Order that Defendant delete and permanently remove the digital

23  media files relating to Plaintiff's Works from each of the computers under

24  Defendant's possession, custody or control;

25      (C)    Order that Defendant delete and permanently remove the infringing

26  copies of the Works Defendant has on computers under Defendant's possession,

27  custody or control;

28      (D)    Award Plaintiff statutory damages per infringed work pursuant to

Complaint – Demand for Jury Trial

1  17 U.S.C. § 504(a) and (c);

2      (E)    Award Plaintiff its reasonable attorneys' fees and costs pursuant to

3  17 U.S.C. § 505; and

4      (F)    Grant Plaintiff any other and further relief this Court deems just and

5  proper.

6      DATED this 22nd day of February, 2023.

7                                        **Law Offices of Lincoln Bandlow, PC**

8                                        *s/ Lincoln D. Bandlow*
                                         Lincoln D. Bandlow
9                                        Attorney for Plaintiff
                                         Strike3 Holdings, LLC
10

11                        **DEMAND FOR A JURY TRIAL**

12     Plaintiff hereby demands a trial by jury on all issues so triable.

13     DATED this 22nd day of February, 2023.

14                                       **Law Offices of Lincoln Bandlow, PC**

15                                       *s/ Lincoln D. Bandlow*
                                         Lincoln D. Bandlow
16                                       Attorney for Plaintiff
                                         Strike3 Holdings, LLC
17

18

19

20

21

22

23

24

25

26

27

28

Complaint – Demand for Jury Trial